September 2015, 39-51. Adam Eggers v. Warden Lebanon Correctional Institution, 39-15. 15 minutes per side. Mr. Brant, please come up. Good morning, your honors. May it please the court. Jeff Brant for Mr. Eggers. Counsel. Just a few brief background points, if the court doesn't mind, before I get to what the issue was that was certified for appeal. Mr. Eggers paid his attorney more than $29,000 to take this case to trial. The attorney bragged about being a top trial attorney in Columbus and promised to take the case to trial. This is all in the record. There's a dispute about whether affidavits and additional evidence should be considered. We asked the court to look at that entire record. And that includes the information that shows that this was on the trajectory of going to trial. Instead, on a day when Mr. Eggers thought he was going to plead not guilty to additional charges, he's told that he has no choice, he can't go to trial, his attorney's not ready, and he should plead guilty. Against that backdrop, the district court certified this issue. Whether Mr. Eggers' statements of innocence were sufficient protestations of that innocence that would require application of Alfred. The state court said no, and the ground for saying no was that Mr. Eggers had, quote, waited until sentencing. And our argument is that's a false distinction. It's an imaginary line. The very first time Mr. Eggers was allowed to speak since saying the word guilty, 114 seconds later, he said, I didn't do this. I mean, it's a little misleading in my view. I mean, the rule 11 colloquy, there's quite a few questions about what it means to plead guilty. I mean, technically, what you said is accurate because the last part of the whole thing is the guilty plea. But there's nothing, there's no prohibition against having a guilty plea hearing and then sentencing after. Completely agreed. I don't even know why 144 seconds matters. It could be one. I mean, the fact is you're in the next phase. The protection, that's what the rule 11 colloquy is about. And that's where you have a very long set of questions and answers, which he says he knows what he's doing and wants to do what he did. I see your honor's point. But rule 11 means something to you and I. Rule 11 doesn't mean anything to Mr. Eggers. He doesn't recognize what rule 11 means. He only knows that he said at the end of that process, that takes a while, guilty. And then the very next opportunity to speak again, something magical has happened from our point of view that we're now to sentencing. But to the average person, nobody knows that we've moved from rule 11. I quite disagree with you. The average person in court, under oath, asked about the facts of a murder, investigation, allegation, and is asked questions about whether you did it. I think the average person really understands what that is. And that's a really solemn, consequential event. I quite disagree with the point that you can assume that when a judge asks, did you murder somebody, and you say yes. And after being told all the rights you have if you go to trial, this whole system crumbles if we can't trust people to understand those questions and answer them honestly. Your honor, I think Alfred says when you've got a statement that I'm guilty, that's very close to a statement that I didn't do it. Alfred itself, he says at the same time, I'm guilty but I didn't do it and I'm only doing this to avoid the death penalty. He's doing that during the colloquy. So right there, both things can't be true. He had no such problem where you had two things that were opposites being said. So the question is, where is that line going to be drawn? Of course there's gray area, right? So the question is, at the exact same time, Alfred applies. If it's three months later at a separate sentencing hearing, yes, someone certainly waited. But did Mr. Eggers wait until sentencing? Is that the reason we say Alfred doesn't apply? More precisely, he waited until after he pled guilty. If you want to draw a clean line, that would be the line, wouldn't it? And so how often would Alfred apply? Alfred would apply when he says, I didn't do it but I'm pleading guilty. Or I'm pleading guilty, do you want to plead guilty even though you didn't do it? But when he says guilty, if you just want a line, if you don't want a line, if you just want to say, well, afterwards they can take it back. But it's kind of strange then. Well, I think Alfred has a much more narrow application overall. If it's something other than what I think, Judge Rogers, you were about to go, I didn't do it but I'm pleading guilty, what if it's I'm pleading guilty but I didn't do it? So it's one second later, as Judge Sutton mentioned. Does that mean Alfred doesn't apply now? And I think that's our point. Can we have a published opinion from this court on where that line is and is the state court right that under Alfred, no, it can't possibly apply because he waited? Technically speaking, I mean, you said gray areas. And the minute you say it's a gray area, you lose on habeas. We don't. Because habeas requires, to grant habeas relief, you have to show that you're violating clearly established standards by the U.S. Supreme Court. I'm not saying that the law is gray. I'm saying that Alfred says when you have a at the same time, we don't have a decision that's saying this is not the same time. If he had said this statement that he didn't do it the next day, you think Alfred wouldn't apply then? Reasonably, I have to say yes. Or two hours later?  Or two hours after he pleaded guilty and signed it? If he had been sentenced and he's sitting in a cell, it would be a tougher argument. It would. But here, again, it's the very next time he talks. When he said, do you have anything to say, Mr. Eggers said, I didn't even know I was allowed to talk since I said I plead guilty. But now that I can talk, I didn't do this. What's your clearly established case for this? Because we've acknowledged that the Alfred facts are not on point because when he acknowledges guilt at the same time, he says he's innocent. So here, what's the best case for you that gives us the authority to grant relief under the habeas statute? I am saying it's Alfred because I'm not saying Alfred doesn't apply. I'm saying, yes, there's a difference of facts, but we can't. Well, the Supreme Court's told us when we do this, when we look at clearly established decisions, we're looking at clearly established holdings. And I'm looking at the rule of Alfred, and the rule of Alfred says if you've got a defendant who's saying both I'm guilty and then I'm not guilty, the judge has to take the steps to do additional inquiry as to why that person is still pleading guilty. Did the state court also argue or contend that this wasn't a retraction of admission of guilt, but rather just part of an apology? I don't think the state court got to that. I said, look, you waited. Alfred doesn't apply. I think it was the magistrate judge that adopted it. The magistrate judge. Yes, in the district court below. Then adopted by the district court that said, okay, even if we get past that question, is this a statement of innocence or is this an apology? There's a certain amount of ambiguity there, isn't there? I'd like to apologize. That sounds like he's about to make an apology. He says, you know I loved her. You know I didn't do it. The you in both of those cases presumably refers to the family, right? Well, I mean under normal reading. Okay. Or her. I don't know. When he says that I didn't do it, he could have been meaning that he really meant to shoot somebody else, not her. It was an accidental shooting, right? I guess when he says, and it's I didn't do this, after he said. We all know he probably didn't intend to kill her. He intended to kill somebody else. Well, I mean. Transferred intent probably. He paid his attorney $29,000 to do things like get gun residue tests to prove that it was actually someone else on that lawn that day. You're talking about ineffective assistance of counsel, which is part of the certificate, right? Well, how we got to the district court was on ineffective assistance of counsel claim. That phrase is not used in the issue or how the district court certified the issue for this court on appeal. That's true. If he didn't do it, why is he apologizing to the family? Well, I'm sure he's not happy that she's passed. Yeah, but that. That's the word sadness, not apologize. I understand. You can say, I'm sorry it happened. It may be, but it certainly looks. I mean, the magistrate has a point there. It's pretty ambiguous. You could say it's a statement that you didn't do it, but after having gone through a whole Rule 11 plea, doesn't that make it at least ambiguous? You're saying we can't rely on that because the state court didn't rely on that? No, I'm not, because the question is whether. I think the district court's reason for denying it's wrong, but at the core, the state court failed to apply Alfred. Okay. All right. Thank you very much. May it please the court, I am Hilda Rosenberg, representing the warden. I'd first like to clear up the matter of the so-called background facts. The background facts, those facts concerning what occurred before the plea, the communications between Eggers and his counsel, may not be considered on this appeal under the authority of Cullen v. Pinholster, which limits the record in a habeas corpus case to the record that was before the court deciding the claim. In this case, that was the state court of appeals on direct appeal. They decided the Alfred issue. The affidavits came in during the state post-conviction proceedings, and those are not part of the record in this case under Pinholster. The allegations that the petitioner maintained his innocence, expected to go to trial, but only did not do so because his attorney was not prepared, those are only supported by the post-conviction affidavits, and those may not be presumed as true and as part of the record. How often do state court judges go right from plea to sentencing? Would you call that the norm, or would you call that not the norm? It happens. It does happen. In this case, it was logical for it to happen because the sentence was an agreed and mandatory sentence. So it was logical. There was no need to get reports and all that stuff? There was no PSI. Correct. Actually, one of the cases that I cited, which also in a similar situation held that Alfred did not apply, was the Cochran case, which came out of the Northern District of Ohio. It was very similar to this case. There was a guilty plea, a sentencing, and wedged in between a statement that the defendant argued was one of innocence. And the district court in that case found that an Alfred inquiry was not necessary because the defendant's statement was made after the plea was already accepted. And the reason that that case is important, obviously it's not a Supreme Court case, but under White v. Woodall, habeas corpus relief may not be granted for a state's failure to extend a decision to a different set of facts unless the petitioner can show that the- So this kind of thing happens from time to time where the sentence, for example, there's nothing to debate, it's a mandatory sentence. What's the right action for a trial court judge who goes through the Rule 11 colloquy, the answers all seem to indicate it's no involuntary, et cetera, acknowledgement of guilt, and then the judge says, okay, we're moving to sentencing, you want to say anything, instead of two minutes, it's just right then. Instead of it being ambiguous, it's crystal clear, you know, I'm having second thoughts. I really do want to exercise my right to go to trial, and I don't feel right about pleading guilty to something I didn't do. Is that an Alfred situation? Is that a judge saying, well, I think I better let this fellow withdraw the plea? What's the right action for a state court judge in that setting? Well, first of all- So it's unambiguous as opposed to this case, now what? Well, again, it's not an Alfred situation. I mean, the Alfred safeguards still do not apply and especially do not apply under the standards for habeas corpus relief. But why does it matter? I mean, the point of Alfred is the same as- it's really essentially the same as the test of allowing someone to withdraw the plea. I mean, the question is, do you have a mistake here? No, it is not. There's no constitutional right to withdraw a plea. And in this case, interestingly enough, the defendant did not move to withdraw the plea at that point, which further indicates that he was not actually protesting his innocence. In some sense, it's different from withdrawal of a plea. You could have someone who went through it all, said, I'm guilty, and then immediately said, and the reason I just pled guilty is that- and give a reason, and that's why I'm still pleading guilty, but I want you to know I didn't do it. I lied to you a minute ago when I said I did do it. I didn't do it. And the reason I lied to you a minute ago is because I'm willing to go to jail. Or I was threatened. Well, the Supreme Court in Alford was concerned with true claims of innocence, and it was addressing the problem of whether or not a plea of guilty accompanied with a contemporaneous claim of innocence is truly a voluntary plea under the Fifth Amendment. And for that reason, it held that we are going to place a factual basis requirement to ensure that innocent people do not go to jail, even though they are simply unwilling or unable to admit their innocence. So the Supreme Court was essentially addressing a very particular factual issue as to whether or not a situation in which someone pled guilty but maintained his innocence could legitimately and constitutionally be entering such a plea and whether or not that plea was voluntary. You have these kind of things in the movies and on TV all the time. Someone says, I did it to keep their daughter from having to go to jail. That would be a situation for an Alford plea, wouldn't it? I guess it arguably could. It's not just situations where they're coerced or something. Sometimes they really voluntarily do it. I mean, in this case, the defendant expressly admitted his guilt, and the statement that he made afterwards was not a statement of innocence because he... That's a different argument. I understand that argument. But I thought Judge Sutton was arguing the hypothetical where there was no ambiguity. Yeah, I mean, if there is no ambiguity, there's still... It's possible you could have a voluntarily unambiguous acceptance of guilt just because you don't want someone you love to ever have to go to jail. And there is... Inconceivable, at least. Right, and there is a protection for that. In the Tale of Two Cities, he does that, doesn't he? I mean, the protection for that is, and the Supreme Court in Alford makes mention of this several times, is you have competent counsel that helps you deal with that type of situation. And hopefully those things are, if in fact it's a true claim of innocence, those things are discussed beforehand, and the options are explored with counsel. And there's every reason to believe that he had competent counsel in this case. And the issue of, frankly, the issue of whether his counsel is competent or not on the Alford claim was one that was procedurally defaulted in the state court, waived in the district court, and not subject to the Certificate of Appealability in this case. So we have to presume that he was represented by counsel, and I would argue that that's the type of communication that would hopefully occur between the counsel and the defendant in dealing with the types of situations that you're suggesting and resolve them in the best way possible, and hopefully before you get to the point of the end of the plea colloquy. How long after this did he send this note to the judge that he really wanted to withdraw his plea of guilty? He did, and this is not at all unusual. He did make a motion several days later to withdraw his plea. But again, that's not a necessarily unusual situation, and it occurs in all kinds of cases. So I don't know that that has any special meaning attached. But if he had made that motion that night after he entered the plea, do you think that would have had more weight to it? Well, the court would have had to have considered it and considered the basis for it. I don't know if his basis was that he was innocent, and the court would, again, have to consider whether he had entered his plea voluntarily in deciding the motion to withdraw. So there would be a number of factors still involved, and it's certainly not a definite outcome one way or the other. Is the Alford inquiry really just a repeating of the Rule 11 questions? I don't know what else you would do. The Alford case was very unclear. But they didn't have a Rule 11 colloquy before. Well, the facts in Alford were that he actually got on the stand and testified, maintained his innocence, and then the court took evidence from two witnesses and a policeman, I believe, summarized the evidence of the case. And then his counsel questioned him about whether he understood the nature of the charges and what he was doing. So the facts in that case, at least the facts that the Supreme Court disclosed, were a little different than the normal plea colloquy that we see in the Eggers case. But nevertheless, in that case, again, the defendant was maintaining his innocence prior to the time that he took his plea. Well, Eggers in this case never did say he didn't fire the shot. He said he didn't kill her or something like that. Correct. I mean, this was a felony murder charge. Nobody else was a suspect or anything like that that we know about. Well, truthfully, in the post-conviction affidavits, the police were looking into someone else. But he denied it, and he implicated Eggers in this. And this was a felony murder charge. The underlying felony was improperly discharging a firearm into a habitation. And it wasn't a purposeful murder, a purposeful killing. So Eggers, when he made his statement after he took his plea and he said, I didn't do this, that could easily have been and reasonably have been interpreted by the trial judge as meaning I didn't purposely kill Julie Schneider. And it need not have meant that he didn't commit the actual felony murder, which occurred as a result of his shooting four bullets into a habitation. And as a proximate result, under the felony murder definition, Julie Schneider was dead. So, okay, if this court doesn't have any further questions. Thank you. Thank you. Counselor. Thank you. In Alford, the trial court went through the Rule 11 procedures. Mr. Alford pleaded guilty. A police officer testified. Two other witnesses testified. And then Alford got on the stand and then said, I'm innocent. So I don't know how much time passed when the three witnesses were on the stand, but it was probably longer than 114 seconds. So we think Alford not only applies. Did he actually say, I'm guilty? He pleaded guilty. Much like Mr. Eggers here, what's your plea? Guilty. So I would say Alford is analogous on law and facts. There's nothing in Alford that says you have to say, I didn't do it, but I'm going to plead guilty. And in Alford, it's the exact same order. In Alford, did he ever say he did it other than to say, how do you plead? I plead guilty. I don't know that, Your Honor. I apologize. Eggers? It doesn't really matter unless it's in the case. I don't see it from just my quick review there. You don't think that Alford says you've got to put witnesses on it when you have a plea of guilty, do you? No, Your Honor. I mention that only because the amount of time that's passing between when Mr. Alford said guilty and when he stated, I didn't do this, creating the process for, well, you better find out what the problem is there, the process that we're asking or suggesting that was not followed here. Mr. Eggers, Judge Seiler, did a handwritten pro se motion to withdraw his guilty plea and again stated his innocence four days after pleading guilty and being sentenced. We're not saying that the court has to assume that the affidavits are true. We're saying that the entire record must be reviewed, and here's why. Mr. Eggers' argument, the reason Alford came up is he made a claim that his counsel was ineffective for failing to say, hold on, you said you were guilty and you just said you didn't do it. We should be following Alford here. And so this issue comes up through an ineffective assistance of counsel claim. At that point, the trial court has all those affidavits, and therefore they are in the record by the time the Alford issue comes up. So although the district court judge below isn't using the phrase ineffective assistance of counsel in certifying the issue for appeal, this is an issue that came up only on collateral review, not on direct appeal. So, yes, the entire record, including those affidavits, are before the court. Were they waived on direct appeal? No, absolutely. Were they waived before the state court? It was on collateral appeal, not on direct appeal. This issue, the Alford issue, through ineffective assistance of counsel, and that is why that entire record is properly before this court. Brad Loker was- Before the state court? I'm sorry? The affidavits you're talking about were before the state court. Yes. And there was just one collateral proceeding? Yes. That is correct, Your Honor. Brad Loker was a suspect. He was on the lawn at the exact same time that Adam Eggers was on the lawn when the shot was fired. He was a suspect. Yes, he said he didn't do it. Yes, who said he didn't do it? Brad Loker blamed Adam, Mr. Eggers, excuse me. Thank you, Your Honors. Thank you. Please submit it. Please call the next case.